IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LENNY STANLEY, ) | CIVIL ACTION 4:05-2302--TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## I. PROCEDURAL HISTORY

    The plaintiff, Lenny Stanley, filed applications for DIB on March 24, 2003, and SSI on March 24, 2003, alleging disability since August 1, 2002, due to mental problems, dizzy spells, and chest pain (Tr. 63). His applications were denied initially, and upon reconsideration (Tr. 27-31; 34-35). Plaintiff filed a request for a hearing at which time he amended his alleged onset date of

disability to October 23, 2002. Following a hearing on July 27, 2004 (Tr. 212-240), the Administrative Law Judge (ALJ), Ronald C. Dickinson, found, in a decision dated November 18, 2004, that plaintiff was not disabled (Tr. 14-22). The Appeals Council denied plaintiff's subsequent request for review (Tr. 6-9), making the ALJ's decision the Commissioner's "final decision" for purposes of judicial review under section 205(g) of the Act.

## II.  FACTUAL BACKGROUND

The plaintiff, was born on January 19, 1979, and was 25 years of age on the date of the ALJ's decision. (Tr. 51). He has a high school education and past work experience as a cook, night porter, bagger, and meat worker (Tr. 64, 72-79, 236-237).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)    The ALJ erred by disregarding the opinion of plaintiff's treating psychiatrist that his condition satisfied the criteria of the listings related to his condition.

    (2)    The ALJ's decision is not supported by competent substantial evidence in plaintiff's case.

(Plaintiff's brief).

In the decision of November 18, 2004, the ALJ found the following:

    1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's depression and obsessive compulsive disorder are considered "severe" impairments in combination based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform simple, unskilled work at the light level of exertion with no interaction with the public.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.964).

9. The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

10. Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include

>     work as tobacco sampler, carton packer and bench assembler.
>
> 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 21-22).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

---

[1] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of

disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.

On September 26, 2002, plaintiff presented to Lowcountry Medical Associates with complaints of chest pain. Plaintiff was treated and discharged. (Tr. 160-161). There were no further reports of treatment for chest pain in the evidence of record.

Beginning on October 23, 2002, plaintiff sought mental health treatment from the Charleston-Dorchester Community Mental Health Center. Marilyn Caylor, a counselor, diagnosed major depressive disorder, obsessive-compulsive disorder, and alcohol abuse in full sustained remission and formulated a treatment plan. (Tr. 113-114).

On November 21, 2002, plaintiff presented to Melinda Edwards, M.D., a psychiatrist, and reported that he washed his hands "every five minutes," showered three times per day, had obsessive thoughts of contamination, and compulsively touched objects. Dr. Edwards found that plaintiff's

mood was "okay," and that he had dysthymic effect, constricted speech, and obsessive thought patterns. Dr. Edwards diagnosed psychosis not otherwise specified, obsessive-compulsive disorder, and alcohol abuse in sustained remission. She also prescribed Zyprexa, an anti-psychotic, and Zoloft, an anti-depressant (Tr. 126).

Dr. Edwards and Ms. Calyor continued to treat plaintiff on a regular basis through the date of the hearing. In some of the reports, Dr. Edwards noted that plaintiff was feeling better overall on the medication and noted on some visits that his mood had improved. However, Dr. Edwards continued to find that plaintiff had compulsive obsessive disorder even though his hand washing and bathing had improved and that he suffered from depression, anxiety, impaired concentration and auditory hallucinations.

On May 20, 2003, Donald W. Hinnant, Ph.D., a State agency psychological consultant, completed a Psychiatric Review Technique Form (PRTF) and a Functional Capacity Assessment. Based on the medical records before him, Dr. Hinnant found that plaintiff had schizophrenia on a rule out basis versus psychosis not otherwise specified, obsessive-compulsive disorder, and a history of substance abuse. Dr. Hinnant concluded that these impairments caused mild limitations on plaintiff's activities of daily living and concentration, persistence, and pace, and mild-to-moderate limitations on social functioning. Dr. Hinnant also found that plaintiff had moderate limitations on his abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration, work in coordination with or in proximity to others, complete a normal workday and workweek without interruptions from psychologically based symptoms, and interact appropriately with the general public, but no other significant mental limitations. Dr. Hinnant noted the medical

records showed improvement in plaintiff's mental symptoms with treatment and concluded that he could do at least simple work that was relatively free of public contact (Tr. 163-180).

On May 21, 2003, plaintiff told Dr. Edwards that he was doing well but reported occasional auditory hallucinations and stated that he continued to socialize some. Dr. Edwards found that plaintiff's mood was good and that he had "brighter" affect, normal speech, and concrete thought processes and continues his medications (Tr. 118). When plaintiff saw Dr. Edwards on June 19, 2003, he complained of intermittent depressed mood and auditory hallucinations and occasional obsessive thoughts of contamination. He reported that he washed his hands twice and showered once per day. Dr. Edwards found that plaintiff had a "down" mood, dysthymic affect, and linear thought processes and adjusted his medications (Tr. 118). Plaintiff saw Dr. Edwards for a medication check on July 21, 2003, and reported improved mood, "some mild residual depression," intermittent auditory hallucinations, and occasional obsessive thoughts. Plaintiff stated that he showered twice and washed his hands three times per day. Dr. Edwards found that plaintiff had "better" mood, reactive affect, normal speech, and linear thoughts and adjusted his medications (Tr. 117).

On August 27, 2003, plaintiff again reported to Dr. Edwards that he was intermittently depressed and had thoughts of contamination and occasional feelings of hopelessness. He reported he washed his hands four-to-five times and showered once per day. He also said he enjoyed writing rap music. Dr. Edwards found that plaintiff was alert and oriented, that his mood was "a little down but better," and that he had reactive affect, normal speech, and linear thought processes. Dr. Edwards adjusted plaintiff's medications (Tr. 116).

On October 9, 2003, Dr. Edwards and Ms. Marilyn Caylor submitted a letter which contains a good history of plaintiff's mental condition and reads as follows:

-8-

> Lenny Stanley, a 23 year-old, unmarried, African-American male was first seen at this MHC in May 2000. His family referred him due to reported sudden onset symptoms of talking in response to internal stimuli; hiding in dark closets; having delusions of body pain; kissing the TV; kissing walls along the street; unable to focus; and losing weight. His diagnosis at that time was Psychosis NOS. He withdrew from treatment in June 2002 as "he wanted to find a job." His attempts to work were unsuccessful.
>
> He reentered treatment on October 23, 2003, due to depression; having command auditory hallucinations; visual hallucinations; social withdrawal; impaired concentration; obsessive fear of contamination; excessive hand washing "every 5 minutes," and excessive showering 5 to 6 times a day for 20 to 30 minutes each time. His current psychiatric diagnosis are Major Depressive Disorder with Psychotic features and Obsessive Compulsive Disorder. Medical conditions include a hormone deficiency being treated with Rx Oxeprozin, and a head trauma 3 years ago. A cause and effect relationship of the head trauma to his hormones deficiency and psychiatric symptoms has not been established.
>
> Mr. Stanley has complied with all appointments and has taken all medications as directed. He can perform activities of daily living. Although improved, his symptoms severely limit his ability to function in work or work-like settings. His social isolation, fear of contamination, and excessive hand washing and showering would hinder his leaving the house to go to work, as well as his ability to remain at a work station. His impaired concentration and intermittent auditory hallucinations would limit his ability to complete job tasks.
>
> We recommend that a payee be appointed to manage his funds. His mother is supportive of him and his receiving treatment; she would be a responsible payee.

(Tr. 115).

On October 23, 2003, plaintiff again sought treatment from the Charleston-Dorchester Community Mental Health Center. A social worker found he was alert and oriented with slow thought processes and average intellectual functioning. Plaintiff reported good concentration and memory. The social worker diagnosed psychosis not otherwise specified and assigned a GAF code of 45-44[2] (Tr. 133-135).

---

[2] A GAF code of 41-50 indicates that a person has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social,

Dr. Edwards found that plaintiff's mood was "a little down" and that he had reactive affect and concrete thought processes. Dr. Edwards adjusted plaintiff's medications and on November 20, 2003, plaintiff saw Dr. Edwards again for a medication check which was adjusted. (Tr. 112).

On December 22, 2003, Jeffrey J. Vidic, Ph.D., a State agency psychological consultant completed a PRTF and concluded that plaintiff's major depression and obsessive-compulsive disorder resulted in mild limitations to his activities of daily living, moderate limitations in social functioning and concentration, persistence, and pace, and no episodes of decompensation. Dr. Vidic also concluded that plaintiff's impairments resulted in moderate limitations on his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, work in coordination with others, interact with the general public, and get along with coworkers, but resulted in no other significant mental limitations. Dr. Vidic stated that plaintiff could follow simple instructions and perform tasks that did not require contact with the general public or close coordination with coworkers (Tr. 190-206).

Plaintiff presented to Dr. Edwards on April 15, 2004, and reported stable mood without depression and "occasional" obsessive thoughts. Dr. Edwards found that plaintiff had good mood, reactive affect, and linear thought processes and adjusted plaintiff's medications (Tr. 111).

On May 19, 2004, plaintiff complained to Dr. Edwards that he felt "left behind" by his friends because they had "moved on" and "[had] it together." He reported low self-esteem and occasional tearfulness and feelings of hopelessness. Plaintiff also reported he washed his hands three

---

occupational, or school functioning. A code of 51-60 indicates that a person has moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *See Diagnostic & Statistical Manual of Mental Disorders-Text Revision (DSM-IV-TR)* (2000) (STAT! Ref Library CD-ROM, Fourth Quarter 2005).

times and showered twice per day. He said he spent his time babysitting a cousin, "hanging out with friends," and working on obtaining grants for music school. He also reported he was considering part-time work as a telemarketer prior to starting school the following January. Dr. Edwards found plaintiff was alert and oriented, had a "down" mood, dysthymic affect, and normal speech and continued plaintiff's medications (Tr. 108).

On June 9, 2004, Dr. Edwards and counselor Caylor submitted a statement in which they opine that plaintiff's mental impairments meet the requirements of Listings 12.03, 12.04 and 12.06 with an onset date of October 23, 2002. As the medical basis for the conclusion that plaintiff meets Listing 12.03 Schizophrenic, Paranoid, and other Psychotic Disorders, Dr. Edwards stated that plaintiff has a history of auditory and visual hallucinations, ideas of reference, paranoid ideation, disorganized speech, speaking with unseen others and attention to internal stimuli, as well as, emotional isolation and withdrawal. Dr. Edwards further stated that plaintiff's symptoms severely interfere with social functioning and his ability to perform basis activities. (Tr. 129). As to Listing 12.04 A.1 Affective Disorder, Dr. Edwards states that the medical basis of this conclusion is that the patient has a history of severe depression including anhedonia, insomnia, psychomotor agitation, low self-esteem, suicidal ideation, auditory hallucinations, and ideas of reference, as well as, social withdrawal. He has been unable to work or attend school due to the severity of his symptoms. He has been consistently compliant with all medications and appointments. While medications have been helpful, we have been unable to achieve full remission of symptoms.(Tr. 130). As to Listing 12.06 Anxiety Related Disorders, Dr. Edwards states the basis of his conclusion is that plaintiff has a history of obsessions related to fear of contamination as well as complusive showering and hand-washing, as well as, compulsively touching objects. Dr. Edwards concludes that plaintiff "has a

history of washing hands up to 12 times per hour and showering 3 times per day. These obsessions and compulsions interfered with his ability to socialize or perform basic activities." (Tr. 131).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

Plaintiff argues that the ALJ erred by disregarding the opinion of plaintiff's treating psychiatrist that his condition satisfied the criteria of the Listings related to his condition. Specifically, plaintiff contends that prior to the hearing, he submitted letters from Dr. Edwards and Ms. Caylor, dated June 9, 2004, in which they opined that his condition met the criteria of the listings for 12.03 Schizophrenic, Paranoid, and other psychotic disorders; 12.04 Affective Disorders; and, 12.06 Anxiety related disorders. (Plaintiff's brief p. 4; Tr. 129-31). Thus, plaintiff argues that the ALJ failed to follow the "treating physician rule" as established by the Fourth Circuit. Plaintiff asserts that the ALJ gave greater weight to the opinion of the State Agency psychological consultant than that of the treating psychiatrist.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record.  20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a

disability case and may not be discounted by the ALJ. See, e.g., Coffman v. Bowen, 829 f.2d 514, 517 (4th Cir. 1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence). When evaluating the opinion of a treating physician, the ALJ must consider whether the opinion should be given controlling weight. *See* 20 C.F.R. §404.1527(d)(2). Controlling weight is afforded where the opinion (1) is from a treating source; (2) is a medical opinion concerning the nature and severity of the plaintiff's impairment; and (3) is well supported by medically acceptable clinical and laboratory diagnostic techniques. *See* S.S.R. 96-2p; 20 C.F.R. § 416.927. "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, supra.

A review of the ALJ's decision reveals that he concluded the following with respect to the medical opinions:

> Treatment notes dated July 21, 2003, show that the claimant was continuing to report to his counselor that he was washing his hands 3 times per day and showering once a day. He also reported that he was continuing to socialize, that his mood was good and that overall he was doing well. The record shows no significant increase in symptoms through May 19, 2004, with the exception that his mood was reported as somewhat more depressed on that date. However, no significant increase in compulsive behavior was noted. On his next visit of July 7, 2004, the claimant reported intermittent problems with depressed mood that occurred about twice a week and lasted for a half day. These treatment records include three pages signed by treating psychiatrist Dr. Melinda Edwards dated June 9, 2004, in which it is opined that the claimant meets section 12.03 for schizophrenia, 12.04 for affective disorders, and 12.06 for anxiety related disorders.
>
> . . . In spite of the lack of evidence showing compulsive behavior his treating psychiatrist stated in the June 9, 2004, note that the claimant met the listings for anxiety related disorders due to obsessive-compulsive disorder. The undersigned wishes to point out that a determination that a claimant meets any of the Listing of Impairments falls exclusively within the purview of the Commissioner of Social Security. The undersigned can give very little weight to this opinion of a disabling

-13-

> obsessive-compulsive disorder as the evidence does not come close to documenting that this is a disabling impairment or that it even conclusively exists. Even the claimant's testimony at the hearing that he washes his hands 4-5 times per day cannot be considered excessive. As such the treating psychiatrist's credibility is brought into question in regard to her opinion that the claimant also is disabled due to severe depression and schizophrenia. As stated above the record fails to document consistent evidence of psychosis and the claimant has not reported any hallucinatory symptoms since returning to treatment in October 2002 and being placed back on his medication. Moreover, in the report of contact of May 1, 2003, the claimant sounded quite normal; i.e., he stated that he watches TV, plays video games, goes over to his cousin's house, hangs out with friends, drives a car and goes to the store and makes necessary purchases. Such a normal lifestyle belies the claimant's testimony and the testimony of his brother, as well as the opinion of the treating psychiatrist that the claimant is disabled due to a number of mental disorders.
> 
> The record shows that the claimant does have some persistent depression which is documented throughout the treatment records. However, the claimant's statement as found in the most recent treatment note of July 7, 2004, that he feels intermittently depressed about twice per week that lasts for a half day does not, in the judgment of the undersigned constitute a disabling impairment. As such the undersigned finds that the claimant has moderate limitations in his ability to maintain social functioning and in maintaining concentration, persistence or pace, as was the opinion of State Agency psychological consultants.

(Tr. 17-19).

Based on a review of the ALJ's decision and the evidence of record, the undersigned concludes that the ALJ did not conduct a proper analysis based on Fourth Circuit law in disregarding the treating psychiatrist's and counselor's opinions in favor of the non-examining consultative psychological consultants' opinions. There is no contradictory medical evidence from a treating or even an examining physician or psychiatrist. The ALJ states in his decision that based on claimant's statement in the treatment note of July 7, 2004, that plaintiff feels intermittently depressed about twice per week does not "in the judgment of the undersigned constitute a disabling impairment." (Tr. 19). The ALJ appears to have substituted his own judgment for that of the treating psychiatrist, Dr.

Edwards, who treated and observed plaintiff on multiple occasions. Further, the ALJ found that because he concluded plaintiff did not meet the Listing for obsessive compulsive disorder, he summarily decided that the treating psychiatrists' credibility was in question and he did thoroughly discuss why he found that plaintiff did not meet the other two Listings as set out by Dr. Edwards. As stated under the medical reports section, Dr. Edwards, along with Ms. Caylor, concluded that plaintiff's "isolation, fear of contamination, and excessive hand-washing and showering would hinder his leaving the house to go to work, as well as his ability to remain at a work station" and "his impaired concentration and intermittent auditory hallucinations would limit his ability to complete job tasks" (Tr. 115). The ALJ did not set forth any contradictory medical evidence other than the non-examining psychologist report. The ALJ concluded that the notes and plaintiff's testimony did not support the treating psychiatrist's opinion. Even if there was contradictory evidence, a treating physician's opinion is entitled to deference and must be weighed based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. 416.927. Dr. Edwards is a specialist in her field and had treated plaintiff for a number of years. Thus, Dr. Edwards' conclusions were based on her treatment and evaluation of plaintiff over a period of time. The ALJ's decision to completely discredit Dr. Edwards' medical opinion and conclusions was not supported by substantial evidence and a remand is necessary for a proper evaluation of this opinion and to address each Listing that Dr. Edwards concluded plaintiff met.

## VI.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

ORDERED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

IT IS SO ORDERED.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 11, 2006
Florence, South Carolina